UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Barbara Heinrich, et al., | Case No. 2:20-cv-00166-CDS-MDC |
| Plaintiffs | **Order Denying the Defendants' Motion to Apply New Jersey Law** |
| v. | |
| Ethicon, Inc., et al., | [ECF No. 324] |
| Defendants | |

On March 4, 2026, the court held a hearing on various motions, including the defendants' motion to apply New Jersey law to the plaintiffs' punitive damages (ECF No. 324).[1] *See* Mins., ECF No. 331. At the conclusion of the hearing, I took the defendants' punitive damages motion under advisement. Having considered the motion and the parties' arguments, I deny the defendants' motion.

I.      **Background**[2]

The parties are familiar with the background of the case, so I only summarize and address information relevant to resolving the pending motions before the court.

On January 6, 2014, the plaintiffs filed a short form complaint seeking punitive damages against defendants Ethicon and Johnson & Johnson.[3] *See* ECF No. 4 at 5; *see also* ECF No. 70-1 at 57–60 (the plaintiffs' first amended master long form complaint asserts a claim for punitive damages). On January 21, 2020, the parties submitted a joint designation of record for MDL transfers. *See* ECF No. 70. Therein, the parties designated non-PTO filings from 2:12-MD-2327 for transmission to the transferor court. ECF No. 70 at 1. Part of the exhibits included the

---

[1] All other motions (ECF Nos. 311, 315, 320, 325) that were pending were resolved on the record. I incorporate by reference the March 4, 2026 hearing transcript.

[2] I incorporate by reference the factual background in the court's order, ECF No. 319 at 1–2.

[3] The defendants were engaged in the business of placing medical devices into the stream of commerce by designing, manufacturing, testing, training, marketing, promoting, packaging, labeling, and or sell devices, such as pelvic mesh products. ECF No. 70-1 at 2, ¶ 7.

defendants' master answers. *Id.* Among the defendants' defenses asserted in their answers was "the provisions of all applicable statutory caps on damages of any sort, including punitive, non-economic or exemplary damages, under the laws of the applicable states." ECF No. 70-2 at 47; ECF No. 70-3 at 44; ECF No. 70-4 at 48.

On April 17, 2020, the court entered an order addressing the motion for summary judgment and acknowledging that the parties agreed that Nevada law applied to the substantive claims. *See* ECF No. 86 at 5 n.3 (first citing ECF No. 50 at 4; and then citing ECF No. 59 at 1).

Over five years later, on May 19, 2025, the court rejected the joint pretrial order, in part because the defendants, for the first time, raised a challenge to which law should apply to the plaintiffs' demand for punitive damages. In rejecting the pretrial order, I explained that the issue of whether New Jersey law applies to the plaintiffs' request for punitive damages should be subject to motions practice.[4] *See* ECF No. 297 at 1. Pursuant to that order, the defendants filed this pending motion. *See* ECF No. 324.

**II.     Discussion**

The defendants' motion asks this court to find New Jersey law applies to the plaintiffs' demand for punitive damages. ECF No. 324; ECF No. 70-1 at 57. The plaintiffs oppose the motion arguing that the defendants have forfeited the right to argue what substantive law applies to the plaintiffs' cause of action. ECF No. 328 at 1. The plaintiffs further argue that Nevada does not apply separate state's laws to different issues within a cause of action. *Id.* Finally, the plaintiffs also argue that Nevada has more significant interest in not applying a statutory cap. *Id.* at 7.

Punitive damages are a type of "traditional relief offered in the courts of law." *See Curtis v. Leother*, 415 U.S. 189, 195 (1974). The Supreme Court of Nevada has found that "punitive damages [are] a remedy, not a separate cause of action." *Baker v. Penny Opco, LLC*, 2025 U.S. Dist.

---

[4] Until 2025, the choice of law question for punitive damages was never previously raised by the defendants.

LEXIS 251544, at *2 (D. Nev. Nov. 7, 2025) (citation modified); *Teva Parenteral Meds., Inc. v. Eighth Jud. Dist. Ct.*, 481 P.3d 1232, 1242 (Nev. 2021) (punitive damages derive from an underlying cause of action). Further, punitive damages are not awarded as a matter of right to an injured litigant, but are awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct. *See Coughlin v. Hilton Hotels Corp.*, 879 F. Supp. 1047, 1050 (D. Nev. 1995).

In Nevada, punitive damages are authorized by statute. *See* Nev. Rev. Stat. § 42.001. Section 42.005 provides that punitive damages may not exceed "[t]hree times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more." *Id.* at § 42.005(1)(a). But the "limitations on the amount" of punitive damages does not apply to an action brought against a "manufacturer, distributor or seller of a defective product." *Id.* at § 42.005(2)(a).

As a threshold matter, I first address whether the defendants have waived their choice of law argument to apply New Jersey law to punitive damages. The Ninth Circuit has not clearly established that choice of law claims can be waived; rather, it has indicated the contrary. *See Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) (finding that the defendant did not waive right to application of choice of law provision despite initially failing to assert it and citing other state's law). Other circuits have split on whether choice of law arguments may be waived. *Compare Huber v. Taylor*, 469 F.3d 67, 74–75 (3d Cir. 2006) (holding that plaintiffs did not waive choice of law issue on grounds that "we have been reluctant to apply the waiver doctrine when only an issue of law is raised"), *with Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211–12 (10th Cir. 2001) (finding that party waived choice of law argument by failing to adequately brief it).

Although the parties agreed that Nevada law would apply to the substantive aspect of the case (ECF No. 50 at 4; ECF No. 59 at 1), I find that the defendants have not waived a choice of law argument as to punitive damages. Rather, the defendants arguably reserved an argument

on choice of law in their generic master answers regarding punitive damages (ECF No. 70-3 at 44; ECF No. 70-4 at 48), so I turn to determining the applicable law as it pertains to punitive damages.

In determining which state's substantive law applies in a diversity action, federal courts must apply the forum state's choice-of-law rules. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)). Because this case arises out of diversity jurisdiction (ECF No. 4), I look to Nevada's conflict of laws to make my determination. *Copper Sands Homeowners Ass'n v. Copper Sands Realty, LLC*, 2012 U.S. Dist. 44583, at *10 (D. Nev. Mar. 29, 2012). Nevada applies its own law unless there is a conflict of law. *See Eb Holdings II Inc. v. Ill. Nat'l Ins. Co.*, 2026 U.S. Dist. LEXIS 40488, at *16 (D. Nev. Feb. 27, 2026). A conflict of law exists when two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or conflict. *Id.*

It is undisputed that there is a conflict between Nevada and New Jersey law as it pertains to punitive damages. *See* ECF No. 324 at 3; ECF No. 328 at 21. Nevada law does not cap punitive damages against manufacturers, distributors, and sellers. *See* Nev. Rev. Stat. § 42.005(2)(a). But New Jersey does. *See* N.J. Stat. Ann. § 2A:15–5:12; *id.* at § 2A:15–5.14.

The defendants contend that New Jersey law controls the plaintiffs' request for punitive damages because the relevant conduct is the corporate decision-making at the defendants' headquarters in New Jersey. ECF No. 324 at 1. The defendants further argue that New Jersey has the most significant relationship with the plaintiffs' request for punitive damages. *Id.* at 6. They further assert that the following factors weigh in favor of finding that New Jersey law applies: the place where the conduct causing the injury occurred; the defendants' domicile; and the place where the relationship for punitive damage purposes took place. *Id.* The defendants argue that there is only one connection to Nevada, and that is the place where the injury occurred. *Id.*

In opposition, the plaintiffs assert: (1) Nevada law classifies punitive damages as a remedy, not a separate cause of action; and (2) even if splitting choice of law was allowed, Nevada's interest in punishing and deterring conduct affecting Nevada residents outweighs New Jersey's interest in protecting corporate entities. ECF No. 328 at 1–2. Further, the plaintiffs argue that because Nevada law applies to the plaintiffs' claims, the court should not apply a different state's law to individual issues within the case. *Id.* at 4. The plaintiffs further argue that Nevada has a more significant relationship, and § 146 of the Restatement requires the court to apply the law of the state where the injury took place. *Id.* at 8.

Punitive damages are designed to punish the defendant, not to compensate the plaintiff, so the choice-of-law inquiry for punitive damages provisions is necessarily "defendant-focused." *See Golden v. Wyeth*, 2013 WL 4500879, at *3 (E.D.N.Y. Aug. 20, 2013). Further, because the Supreme Court of Nevada has not addressed whether dépeçage should be adopted in this state, this court must predict whether it would adopt it if this case were before that court. *See Sivil v. Country Mut. Ins. Co.*, 619 F. Supp. 3d 1072, 1076 (D. Nev. 2022) (citing *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996); *Gomez v. Am. Med. Sys.*, 2021 U.S. Dist. LEXIS 273184, at *3 (D. Ariz. June 17, 2021) (explaining claims involving punitive damages lead to dépeçage). As such, I find that in this particular case, the court would adopt dépeçage for punitive damages.

For tort actions, Nevada has adopted the Restatement (Second) of Conflict of Law's most-significant-relationship test (§ 145) to determine the choice of law, unless a more specific section of the Restatement applies to a particular tort. *Gen. Motors Corp. v. Eighth Jud. Dist. Ct.*, 134 P.3d 111, 116 (Nev. 2006). The state with the most significant relationship is determined by looking to (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145 (1971). While the court generally will look to the place where the injury took place, the court shifts its focus to § 6 if there is "some

evidence of a relationship between the non-forum state, the occurrence giving rise to the claims for relief, and the parties." *Gen. Motors Corp.*, 134 P.3d at 117. Section 6 of the Restatement injects flexibility into the choice-of-law analysis. *Id.* at 117. Courts generally consider the states' policies, the parties' expectations, and how easily the states' laws could be applied. *See id.* (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

I first consider the § 145 factors. Here, the plaintiffs' injury occurred in Nevada and the defendants are domiciled in New Jersey. As such, factor one favors the plaintiffs whereas factor three favors the defendants. *See* Restatement (Second) of Conflict of Laws § 145(2)(a), (c). The conduct causing the injury factor (*id.* at § 145 (b)) is neutral given the plaintiffs' allegations. Those allegations include:

- that the defendants **sold** their products to the plaintiffs' healthcare providers in Nevada without adequate testing to ensure the products were reasonably safe, ECF No. 70-1 at 57, ¶ 234; *see also* ECF No. 328-10 at 16, 19, 42;

- that the defendants knew or should have known that the pelvic mesh products were inherently dangerous with respect to risks of pain and suffering, remedial surgeries and treatments, *id.* at ¶ 236; and

- that the defendants **intentionally misstated and misrepresented data** to providers in Nevada to minimize the risk of injuries. *Id.* at ¶ 241; *see also* ECF No. 328-10 at 16, 19, 42.

Given these allegations, the defendants' arguments (ECF Nos. 324, 329) that all conduct giving rise to punitive damages is tied to New Jersey is not wholly persuasive. *See* ECF No. 70-1 at ¶¶ 3–4, 7–8, 80–81, 248. For instance, Thomas Storozuk was a sales representative hired by Dr. Hsieh, and Storozuk marketed the TVT Secur in Nevada using patient brochures and sales brochures, in order to educate the physicians. *See* Sep. 19, 2018 dep., Pl.'s Ex. 10, ECF No. 328-10 at 16, 19, 42. Storozuk educated physicians about Ethicon's products and demonstrated the products Ethicon offered. *Id.* at 43. Moreover, Storozuk was the only representative for the Ethicon gynecologic products (which included TVT Secur). *Id.* at 25. Further, Dr. Hsieh

6

provided in his deposition that he received training from Ethicon on TVT Secur. May 30, 2018 dep., Pl.'s Ex. 7, ECF No. 328-7 at 24. Thus, while undoubtedly some of the defendants' conduct occurred in New Jersey, it was not exclusively in that state.

Finally, I find that the last factor favors the plaintiffs because the relationship between the parties is centered in Nevada. Specifically, the mesh was marketed and ultimately sold to providers (including Heinrich) in Nevada, Dr. Hsieh implanted the TVT Secur in Nevada (Pl.'s Ex. 7, ECF No. 328-7 at 7), and the consultation related to the surgery occurred in Nevada, not New Jersey (*id.* at 34–35). Heinrich was counseled as to risks, benefits, options, and alternatives in treating her stress urinary incontinence during her treatment at Dr. Hsieh's clinic. *Id.* at 35, 41. Further, the consent indicating possible risks from the surgery was signed on January 18, 2008 in Nevada and the form indicated that the surgery was recommended by Dr. Hsieh. *Id.* at 43–44. Dr. Hsieh further indicated that in January of 2008, he was aware of several risks of the surgery, but was unaware of the risks concerning scarring, shrinkage of tissue. *Id.* at 56, 58. And finally, the mesh implantation surgery was performed in Nevada. ECF No. 4 at 4, ¶ 11. This information weighs in favor of finding that the relationship between the plaintiffs and the defendants are centered in Nevada, not New Jersey.

While the harm at the heart of this litigation took place in Nevada, I may consider factors under § 6 if the defendants can show that a relationship exists between a non-forum state. The defendants attempt to argue that § 6 factors are satisfied by asserting that New Jersey enacted its Products Liability Act and Punitive Damages Act to encourage development and sale of a product while limiting punitive damages. The defendants also argue that there have been numerous Ethicon pelvic-mesh cases that have held that New Jersey has a significant relationship to punitive damages. ECF No. 324 at 10; ECF No. 329 at 10. But those decisions are not binding on this court. Because I find that several arguments raised by the defendants are conclusive at best, and the most-significant-relationship test weighs in favor of the plaintiffs, I find Nevada law governs the demand for punitive damages.

III.    Conclusion

IT IS HEREBY ORDERED that defendants' motion to apply New Jersey law to the plaintiffs' request for punitive damages [ECF No. 324] is DENIED.

Dated: March 24, 2026

_____
Cristina D. Silva
United States District Judge

8